UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
BNB PARIBAS,                                :
                                            :
            Interpleader-Plaintiff,         :        09 Civ. 5351 (DLC)
                                            :
      -against-                             :
                                            :
WAYZATA OPPORTUNITIES FUND II,              :
LP, et al.,                                 :
                                            :
            Interpleader-Defendants.        :
                                            :
-----------------------------------------------------X


**DEFENDANT WAYZATA OPPORTUNITIES FUND, II, LP'S
MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT AND ORDER DISTRIBUTING PROCEEDS**


Frank S. Occhipinti (FO 7204)
Charles A. Stewart, III (CS 7099)
STEWART OCCHIPINTI, LLP
65 West 36th Street, 7th Floor
New York, New York 10018
(212) 239-5500 (tel)
(212) 239-7030 (fax)
focchipinti@somlaw.com

*Attorneys for Interpleader Defendant
Wayzata Opportunities Fund II, L.P.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ……………………………………………………………………1

FACTS …………………………………………………………………………………………2

ARGUMENT …………………………………………………………………………………..3

    I.     CERTAIN PARTICIPATING LENDERS ARE NOT ENTITLED TO
          SUMMARY JUDGMENT ……..……………………………………………………..3

          A.  Standards for Summary Judgment ………………………………………………..3

          B.  The Credit Agreement Provides That Only Fees and Expenses
              Incurred on Behalf of All Lenders Be Paid From The Proceeds
              of the Asset Sale ………………………………………………………………..4

          C.  Summary Judgment is Inappropriate Because There are Issues of Fact
              Regarding Whether the Participating Lenders Acted in Good Faith
              When They Amended the Credit Agreement …………………………………..

          D.  Genuine Issues of Material Fact Exist as to Reasonableness
              and Necessity of Fees and Expenses Sought ……………………………………..7

    II.    THE PARTICIPATING LENDERS' CLAIM FOR FEES AND EXPENSES
          AGAINST THE PROPEX BANKRUPTCY ESTATE SHOULD BE
          TRANSFERERD TO THE TENNESSEE BANKRUPTCY COURT ………………9

CONCLUSION …………………………………………………………………………12

## TABLE OF AUTHORITIES

Federal Cases                                                                          Page

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202
(1986)……………………………………………………………………….. 3, 4

*Balderman v. United States Veterans Administration,* 870 F. 2d 57 (2d Cir. 1989)……… 3

*Bay v. Times Mirror Magazines, Inc.*, 936 F. 2d 112 (2d Cir. 1991)…………………….. 4

*Care Travel Co. v. Pan Am. World Airways, Inc.*, 944 F. 2d 983 (2d Cir 1991)………… 5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)……… 3

*D'Amico v. City of New York*, 132 F. 3d 145 (2d Cir.), *cert. den.*, 524 U.S. 911,
118 S. Ct. 2075, 141 L. Ed. 2d 151 (1998)…………………………………………… 3

*Daigneault v. Yonkers Racing Corp.*, 735 F. Supp 62 (S.D.N.Y. 1989)………………… 5

*Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F. 2d 54 (2d Cir. 1987)… 4

*Feldman v. Talon Paint Products, Inc.*, 2002 Dist. LEXIS 20110 (S.D.N.Y. 2002)…… 12

*Fidelity Summer St. Trust v. Toronto Dominion (Texas), Inc.,*
2002 U.S. Dist. LEXIS 15276 (D.Mass. Aug. 14, 2002) ………………………………… 10

*Gallo v. Prudential Residential Services, Limited Partnership,* 22 F. 3d 1219
(2d Cir. 1994)…………………………………………………………………………… 4

*Goldberg Holding Corp. v. NEP Productions, Inc*., 93 B.R. 33 (S.D.N.Y. 1988)………… 16

*Highland Crusader Offshore Partners, L.P. v. Lifecare Holdings, Inc.,*
2008 U.S. Dist. LEXIS 66229 (N.D. Tex. Aug. 27, 2008) ……………………………… 9

*Hunt Ltd. v. Lifshultz Fast Freight, Inc.*, 889 F. 2d 1274 (2d Cir. 1989)………………… 5

*In re KeySpan Corp. Secs. Lit.*, 2005 U.S. Dist. LEXIS 29068 (E.D.N.Y 2005)……….. 13

*In re McLean Industries, Inc.*, 88 B.R. 36 (Bankr. S.D.N.Y. 1988)……………………… 15

*In re Millenium Seacarriers, Inc.*, 419 F. 3d 83 (2d Cir. 2005) …………………………… 17

*In re Petrie Retail, Inc.*, 304 F. 3d. 223 (2d Cir. 2002)…………………………………… 16

*In re S.G. Phillips Constructors, Inc.*, 45 F. 3d 702 (2d Cir. 1995)……………………… 17

*Jasco Tools, Inc. v. Dana Corp. (In re Dana Corp.)*, 574 F.3d 129 (2d Cir. 2009) ……… 8

*L.B. Foster Co. v. America Piles, Inc.*, 138 F. 3d 81 (2d Cir. 1998)…………………   3

*M/A-COM Sec. Corp. v. Galesi*, 904 F. 2d 134 (2d Cir. 1990) …………………………… 9

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574,
106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)……………………………………………..   3

*Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F. 2d 884 (2d Cir. 1990)…………… 5

*Musicland Holding Corp. v. Wachovia Bank, N.A. (In re Musicland Corp.)*,
386 B.R. 428 (S.D.N.Y. 2008) …………………………………………………………..10

*National Helicopter Corp. v. City of New York*, 1999 U.S. Dist. LEXIS 11702
(S.D.N.Y. 1999) …………………………………………………………………… 13

*Ramseur v. Chase Manhattan Bank,* 865 F. 2d 460 (2d Cir. 1989)………………………   3

*Reliastar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F. 3d 81 (2d Cir. 2009) ……   9, 10

*Rodriguez v. The City of New York,* 72 F. 3d 1051 (2d Cir. 1995)………………………..   3, 4

*Seippel v. Jenkins & Gilchrist, P.C.*, 341 F. Supp. 2d 363(S.D.N.Y. 2004)………………..12

*Thyroff v. Nationwide Mut. Ins. Co.,* 460 F. 3d 400, 407 (2d Cir. 2006) …………………  9, 11

*United States v. Diebold, Inc.,* 369 U.S. 654 (1962)……………………………………..3

*United States v. Rem,* 38 F. 3d 634 (2d Cir. 1994)……………………………………   4

*Zilg v. Prentice-Hall, Inc.*, 717 F. 2d 671 (2d Cir. 1983), *cert. denied*,
466 U.S. 938, 104 S. Ct. 1911, 80 L. Ed. 2d 460 (1984) …………………………………  11

<u>State Cases</u>

*Gross v. Empire Healthchoice Assur., Inc.,* 16 Misc 3d 1112A,
847 N.Y.S.2d 896 (Sup. Ct. NY Co. 2007) ………………………………………… 10

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A. Inc.,* 41 A.D.3d 269,
838 N.Y.S.2d 536 (1st Dep't 2007) ………………………………………………… 10

*Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.,* 309 A.D.2d 288,
765 N.Y.S.2d 575 (1st Dep't 2003) ………………………………………………… 10

*Silvermark Corp. v. Rosenthal & Rosenthal Inc.,* 856 N.Y.S.2d 503,
2008 N.Y. Misc. LEXIS 270 (Sup. Ct. NY Co. Jan. 25, 2008) …………………………… 10

Statutes

11 U.S.C. § 503(b)……………………………………………………………………    14

28 U.S.C. § 157…………………………………………………………………    16

28 U.S.C. § 1334(e)…………………………………………………………    16

28 U.S.C. § 1404…………………………………………………………………    15

Professional Rules

American Bar Assn. Model R. of Professional Conduct 1.5(a)…………………………    12

New York Code of Prof. Resp., Comp. Codes R. & Regs., Title 22, § 1200.11 (2009)...    12

Wayzata Opportunities Fund II, LP ("Wayzata") respectfully submits this memorandum of law in opposition to the motion of Certain Participating Lenders[1] for summary judgment on their claim for a priority distribution of funds, deposited in this Court by Interpleader Plaintiff BNP Paribas ("BNP"), for so-called "Enforcement Fees and Expenses" allegedly incurred by Certain Participating Lenders in connection with their efforts to enforce their borrower's obligations under a credit agreement (the "Credit Agreement") among the borrower, Propex, Inc., all of its lenders (the "Lenders") and BNP, the Administrative Agent for the Lenders.

## PRELIMINARY STATEMENT

At the heart of this motion is Certain Participating Lenders' claim for their fees and expenses incurred in connection with their unsuccessful attempt to purchase the assets of the debtor, Propex, Inc., a debtor in a bankruptcy case pending in United States Bankruptcy Court for the Eastern District of Tennessee (the "Bankruptcy Case").   Moving Defendants contend that the Credit Agreement specifically contemplates the recovery of such fees and expenses, from the proceeds of the Propex asset sale, notwithstanding the fact that those fees and expenses were not incurred on behalf of all Lenders, but only one group of Lenders.  Pursuant to a unilateral and retroactive amendment to the Credit Agreement engineered by or on behalf of the Moving Defendants, they also argue that they are entitled to recover their fees and expenses on a priority basis, thus unsettling the ratable distribution of proceeds to all Lenders originally contemplated by the Credit Agreement.  In pursuing their claim, the Moving Defendants have incorrectly framed the issue for resolution by this Court.   The issue properly framed for resolution is not whether the Moving Defendants simply are entitled to "obtain payment of fees and expenses

---

[1]        "Certain Participating Lenders" are those Interpleader Defendant entities identified in footnote 1 to the Memorandum of Law in Support of Motion for Summary Judgment and Order Distributing Proceeds ("Moving Mem.").   They will, hereinafter, be referred to as "Certain Participating Lenders" or the "Moving Defendants."

incurred to enforce the obligations of their borrower, Propex." Rather, this Court must first decide whether Moving Defendants' individual fees and expenses (as opposed to fees and expenses incurred by the Administrative Agent, BNP, for the benefit of all lenders) are properly reimbursable under the Credit Agreement out of proceeds of the asset sale, or whether the true character of Moving Defendants' claim is a priority claim for an administrative expense against the Debtor's estate. It must then find that the amendment of the Credit Agreement was appropriate under the terms of the Credit Agreement and not motivated by bad faith. Finally, even if this Court determines that Certain Participating Lenders' fees and expenses are reimbursable under the Credit Agreement, it must also determine that those fees were both reasonable and necessary in the full context of the Bankruptcy Case relating to the asset sale. Questions of fact exist as to these questions. While Certain Participating Lenders have asked this Court to make those findings based upon the submission of counsel, the court in the best position to make those determinations is the Bankruptcy Court administering the Bankruptcy Case, which explicitly retained jurisdiction over all questions relating to the asset sale. For this reason, for the convenience of the parties and in the interests of justice, venue for this action should be transferred to the Bankruptcy Court for the Eastern District of Tennessee.

**FACTS**

In opposition to Certain Participating Lenders' motion for summary judgment, Wayzata relies upon the facts set forth in Wayzata's Local Civil Rule 56.1 Statement ("Statement"), the accompanying declaration of Jeffrey S. Norwood ("Norwood Decl.") and the exhibits annexed thereto, which are incorporated herein and as to which the Court is respectfully referred.

**ARGUMENT**

**POINT I**

**CERTAIN PARTICIPATING LENDERS ARE NOT
ENTITLED TO SUMMARY JUDGMENT**

    **A.**    **Standards For Summary Judgment**

      "Summary judgment is appropriate only where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.), cert. den., 524 U.S. 911, 118 S. Ct. 2075, 141 L. Ed. 2d 151 (1998); *Rodriguez v. The City of New York,* 72 F.3d 1051, 1060 (2d Cir. 1995).  The party seeking summary judgment bears the initial burden of showing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).  In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).  The court has a duty to examine *all* factual assertions in materials such as affidavits and exhibits in the light most favorable to the non-moving party.  *See Rodriguez,* 72 F.3d at 1061 (emphasis added) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Balderman v. United States Veterans Administration,* 870 F.2d 57, 60 (2d Cir. 1989); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir. 1989)). Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, there exists a dispute about material facts "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. at 248; *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991).  Finally, when deciding a motion for summary judgment, the court must not weigh evidence, consider the credibility of a witness, or attempt to resolve issues of fact.  *Rodriguez,* 72 F.3d at 1061 (citing *Anderson,* 477 U.S. at 255; *United States v. Rem,* 38 F.3d 634, 644 (2d Cir. 1994); *Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 58 (2d Cir. 1987); *Gallo v. Prudential Residential Services, Limited Partnership,* 22 F.3d 1219, 1223-24 (2d Cir. 1994)).   Application of these established standards to the facts of this case requires that Certain Participating Lenders' motion for summary judgment be denied in its entirety.

      **B.**     **The Credit Agreement Provides That Only Fees and Expenses Incurred on Behalf of All Lenders Be Paid From The Proceeds of the Asset Sale**

Under the Certain Participating Lenders' construction of the Credit Agreement, in addition to fees and expenses incurred by the Administrative Agent on behalf of all Lenders, each *individual* Lender also potentially would be entitled to receive its legal fees from the proceeds of the Propex asset sale.  Contrary to the Moving Defendants' argument, this interpretation is not supported by the plain meaning of the Credit Agreement.  The Credit Agreement provides that Propex agreed to pay:

> all costs and expenses , <u>including reasonable attorneys' fees …</u>
> <u>incurred by Administrative Agent and Lenders</u> in enforcing any
> Obligations of or in collecting any payment due from any Loan
> Party hereunder or under the other Loan Documents (including in
> connection with the sale of, collection from, or other realization
> upon any of the Collateral or the enforcement of the Loan
> Documents) or in connection with any refinancing or  restructuring
> of the credits arrangements provided under this Agreement in the
> nature of a "work out" or pursuant to any insolvency or bankruptcy
> proceedings.

*See* Credit Agreement at § 10.2(ix), pp. 137-138 (emphasis added).

The term "Lenders" is defined in the Credit Agreement as "the Persons identified as "Lenders" and listed on the signature pages of this Agreement…" *Id.* at § 1, Definitions at p. 20; *see also* Preamble to the Credit Agreement at p. 1, referring to "The Financial Institutions Listed on the Signature Pages Hereof (each <u>individually referred to as a 'Lender' and collectively as 'Lenders'</u>)." (emphasis added). The Credit Agreement does not, by its express terms, envision each individual Lender being entitled to recover its attorneys' fees and expenses. Rather, it only provides for the reimbursement of fees and expenses incurred by or on behalf of *both* "Administrative Agent and Lenders." The use of the conjunctive term "and" (instead of "or") and the explicit reference to "Lenders" (plural) as opposed to any one individual lender supports the interpretation that an individual Lender (or even a group of Lenders) is not entitled to recovery of attorneys' fees. *See Daigneault v. Yonkers Racing Corp.*, 735 F. Supp 62, 64 (S.D.N.Y. 1989) (rejecting defendant's "strained interpretation ignor[ing] the use of the word "and," which shows that the provision is clearly written in the conjunctive."); *see also Care Travel Co. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 987-88 (2d Cir 1991) ( "Under New York law, if a contract is unambiguous on its face, the parties' rights under such contract should be determined solely by the terms expressed in the instrument itself, rather than from extrinsic evidence as to what terms might be preferable") (quoting *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc*. 906 F.2d 884, 889 (2d Cir. 1990)).

In discussing the issue of ambiguity, the Second Circuit has stated that "contract language is not ambiguous if it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for difference of opinion." *Hunt Ltd. v. Lifshultz*, 889 F.2d 1274, 1277 (2d Cir. 1989). Here, the term "Lenders" has a clear and defined meaning in the Credit Agreement. It means all Lenders,

"collectively," not one or just some of the Lenders.  *See* Credit Agreement at § 1, Definitions at p. 20.  BNP, as Administrative Agent was represented by counsel in connection with its efforts on behalf of all Lenders to enforce the terms of the Credit Agreement.   *See* Norwood Decl. at ¶ 5.   BNP filed a proof of claim on behalf of all Lenders, and the law firm of Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden") represented the collective interests of BNP and the other Lenders in the Bankruptcy Case.  *Id.*  Although individual Lenders such as Black Diamond Management, Inc. or one or more of the Certain Participating Lenders submitted supplemental or supporting papers in connection with motions in the Bankruptcy Case (*see* Norwood Decl. at ¶¶ 8, 12, 16), those submissions were not filed on behalf of all Lenders, but were filed in addition to the submissions made by counsel to the Administrative Agent, on behalf of all Lenders.  *Id.*

It is not disputed that on May 15, 2009, Certain Participating Lenders advised BNP that they had amended Section 2.4D of the Credit Agreement to add "a new Section 2.4D(ii) to the Credit Agreement" that provided for the priority payment of their enforcement fees and expenses immediately after the fees and expenses of the Administrative Agent, but before the *pro rata* distribution of the proceed of the sale to all Lenders.  Participating Lenders argue now that there was an ambiguity in the Credit Agreement which motivated their decision to amend it.   *See* Moving Mem. at p. 6 ("Participating Lenders came to understand that BNP's non-payment of the Enforcement Fees and Expenses may have stemmed from uncertainty surrounding the language in Section 2.4(D) of the Credit Agreement…").  The Certain Participating Lenders do not state when or under what circumstances this alleged uncertainty was brought to their attention. Because the circumstances surrounding the decision or motivation for amending the Credit Agreement are relevant here, they constitute questions of fact that should not be determined on a

motion for summary judgment, particularly one filed immediately after issue was joined before any discovery has taken place in the action.

Certain Participating Lenders argue that Section 2.4D "omitted from the order of distribution the Section 10.2(x) [sic] requirement that fees and expenses of Lenders in enforcing the Obligations are to be borne by Propex." *Id*. at p. 7.[2]  Wayzata submits that there was no such uncertainty or unintentional omission.  Section 2.4(D) explicitly sets forth the order of distribution of proceeds of the asset sale – first for the payment of costs and expenses of the Administrative Agent; second, to the payment of all other Obligations on a *pro rata* basis; and third, to the payment to or upon the order of Propex or others lawfully entitled to same as a Court may direct.  *See* Credit Agreement § 2.4D (i), (ii) and (iii).   Those subsections make no mention of the fees and expenses of Participating Lenders because, as the Credit Agreement plainly makes clear, it was not contemplated that both the Administrative Agent and each of the Lenders would be duplicating efforts in enforcing Propex's obligations under the Credit Agreement.  This is the only reasonable interpretation of this section of the Credit Agreement, because pursuant to Section 9.1 of the Credit Agreement, "[e]ach Lender…authorize[d] the Administrative Agent to act as its agent in accordance with the terms of the Agreement and the other Loan Documents. Under Section 9.2, "Each Lender irrevocably authorize[d] Administrative Agent to take such action on such Lender's behalf and to exercise such powers, rights and remedies as a reasonably incidental thereto."   BNP, through its counsel, exercised its authority in the Bankruptcy Case to protect the interests of its Lenders.  Since, under Section 10.2(ix), only those fees and expenses incurred by "Administrative Agents and Lenders" (as distinct from one or any number less than

---

[2]   The correct citation is Section 10.2(ix).

all Lenders) are recoverable under the Credit Agreement, there was no inherent uncertainty, and thus no reason, to modify this agreement.[3]

C.    **Summary Judgment is Inappropriate Because There Are Issues Of Fact Regarding Whether the Participating Lenders Acted in Good Faith When They Amended the Credit Agreement**

Certain Participating Lenders argue that the Credit Agreement unambiguously provides that they were entitled to amend the Credit Agreement pursuant to Section 10.6 to permit Black Diamond Capital Management Company L.L.C. to recover its legal fees prior to the *pro rata* distribution to Lenders.  This is not the proper construction of the Credit Agreement.  For the amendment to be effective, the parties voting on the amendment must have acted in good faith. Here, circumstances strongly indicate that the amendment was motivated by animus towards Wayzata as a result of its successful purchase of Propex's assets (*see* Norwood Decl., at ¶¶ 12-16) (describing Wayzata's efforts to purchase Debtors' assets and Black Diamond Group's opposition)), and, thus, violated the covenant of good faith and fair dealing.  Rule 56(f) permits a court to deny a summary judgment motion or order a continuance to allow the opposing party to obtain affidavits, take depositions, or conduct other discovery that is material to its opposition to the motion.  *See Jasco Tools, Inc. v. Dana Corp. (In re Dana Corp.),* 574 F.3d 129, 148-49 (2d Cir. 2009) (reversing summary judgment to permit opposing party to obtain discovery).  This Court should deny Certain Participating Lender's motion under Rule 56(f) to allow Wayzata to

---

[3]    Certain Participating Lenders also argue that the provisions governing amendments do not restrict the ability of a requisite number of Lenders to amend the order of distributions in Section 2.4D.  See Moving Mem. at p. 8.  This argument, however, overlooks Section 10.6 (b)(1), which provides that no amendment, modification, termination, waiver or consent shall, without the consent of "(b) each Lender, (1) change in any manner the definition of "Class" or the definition of "Pro Rata Share" <u>or subsection 2.4C(iii)</u>… *See* Credit Agreement § 10.6 (b)(1) (emphasis added).  Section 2.4C(iii), one of the several "General Provisions Regarding Payments" embodied in the Credit Agreement provides, in part, that the "<u>Administrative Agent shall promptly distribute to each Lender, at the account specified in the payment instructions delivered to Administrative Agent by such Lender, its Pro Rata Share of **all such payments** received by Administrative Agent</u> … *See* Credit Agreement § 2.4C(iii), at pp. 53-54 (emphasis added).

take discovery as to the circumstances surrounding the decision to amend the Credit Agreement as well as the motivation for that amendment.[4]

Under New York law, the implied covenant of good faith and fair dealing is inherent in every contract. *Reliastar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.,* 564 F.3d 81, 88 (2d Cir. 2009); *Thyroff v. Nationwide Mut. Ins. Co.,* 460 F.3d 400, 407 (2d Cir. 2006). It provides that "neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *M/A-COM Sec. Corp. v. Galesi,* 904 F.2d 134, 136 (2d Cir. 1990). The covenant only applies when a party's action directly violates "an obligation that may be presumed to have been intended by the parties." *Thyroff,* 460 F.3d at 407-08. On the other hand, the implied covenant of good faith and fair dealing cannot create an obligation that would be inconsistent with other terms in the contractual relationship. *Highland Crusader Offshore Partners, L.P. v. Lifecare Holdings, Inc.*, 2008 U.S. Dist. LEXIS 66229, at *18 (N.D. Tex. Aug. 27, 2008) (holding that Credit Agreement unambiguously could be amended and dismissing claims for breach of covenant of good faith and fair dealing brought by lender that was not notified of or asked to consent to amendment).

The cases cited by Certain Participating Lenders where amendments to credit agreements have been validated are inapposite, because the record of these cases, unlike here, nowhere indicates that amendments were motivated by bad faith towards one aggrieved party with the intent of benefiting another party; therefore, the duty the covenant of good faith and fair dealing was not implicated. *See Highland Crusader,* 2008 U.S. Dist. LEXIS 66229, at *2-7 (Credit

---

[4]  Under the circumstances, Wayzata does not believe there is a need to submit an affidavit to show why it cannot set forth sufficient facts to refute statements made by Certain Participating Lenders as to their motive in amending the agreement, the circumstances in which they learned of the alleged ambiguity in the Credit Agreement, and the reasonableness and purpose of the professional fees. The reasons are obvious and do not require further explanation; Certain Participating Lenders moved for summary judgment immediately after issue was joined, before any discovery was shared. If permitted by the Court, Wayzata intends to take focused discovery of a principal of the Moving Defendants and one or more professionals.

Agreement amended to "increase interest coverage and net leverage ratios on the Revolver and Term Loans", "increase existing rights to cure existing defaults" and "increase initial basis points" on revolver and terms loans); *Musicland Holding Corp. v. Wachovia Bank, N.A. (In re Musicland Corp.),* 386 B.R. 428, 431-35 (S.D.N.Y. 2008) (revolving credit agreement amended to bring in a term lender after revolving lenders refused to increase availability to borrower experiencing financial difficulties); *Fidelity Summer St. Trust v. Toronto Dominion (Texas), Inc.,* 2002 U.S. Dist. LEXIS 15276 (D.Mass. Aug. 14, 2002) (Credit Agreement amended to require the approval of majority of lenders for sale or assignment of loans).  Put another way, a party to a contract may have a contractual right to act, but it cannot do so for reasons motivated by bad faith.  Parties to a contract are expected to act in good faith.  "New York courts have repeatedly affirmed that a claim for breach of the implied covenant of good faith can stand on its own, independent of a breach of contract claim, where a plaintiff alleges that a defendant has exercised its rights under the contract in bad faith in order to deprive the other party of the fruit of its bargain."  *Silvermark Corp. v. Rosenthal & Rosenthal Inc.,* 856 N.Y.S.2d 503, 2008 N.Y. Misc. LEXIS 270, at *3-4 (Sup. Ct. NY Co. Jan. 25, 2008) (citing *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A. Inc.,* 41 A.D.3d 269, 838 N.Y.S.2d 536 (1st Dep't 2007); *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.,* 309 A.D.2d 288, 765 N.Y.S.2d 575 (1st Dep't 2003); *Gross v. Empire Healthchoice Assur., Inc.,* 16 Misc 3d 1112A, 847 N.Y.S.2d 896 (Sup. Ct. NY Co. 2007).

In *Reliastar,* the Second Circuit considered whether the parties' inclusion in an arbitration agreement of provision stating that each will bear the expenses of its own arbitrator and its own attorney deprived the arbitration panel of the power to award such expenses as a sanction against a party whom the panel determined failed to arbitrate in good faith.  564 F.3d at 83.  The Second Circuit held that the provision "is fairly understood to reflect the parties'

agreement as to how fees are to be borne, regardless of the arbitration's outcome, in the expected context of good faith dealings." *Id.,* at 88 (emphasis added) (citing *Thyroff,* 460 F.3d at 407). The Second Circuit held that the arbitration provision "is properly construed to reflect the parties' agreement that the arbitrators may not factor attorney's or arbitrator's fees into awards that result from the parties' expected good faith arbitration of a dispute." *Id.* Similarly, the parties' agreement in the Credit Agreements respecting when amendments are permitted is properly construed to apply only to amendments that are motivated by good faith, such as to advance the interests of either all or a majority of the Lenders and not merely to disadvantage one Lender and benefit another.

In addition, implied contractual obligations may coexist with express provisions which seemingly negate them where common expectations or the relationship of the parties as structured by the contract so dictate. *Zilg v. Prentice-Hall, Inc.*, 717 F.2d 671 (2d Cir. 1983), *cert. denied*, 466 U.S. 938, 104 S. Ct. 1911, 80 L. Ed. 2d 460 (1984) (publisher must make good faith initial promotional efforts notwithstanding contract clause vesting in it the sole determination as to number of volumes printed and amount of advertising expenditures). Certainly, Wayzata expected the Lenders to act in good faith. New York courts recognize that, where a covenant of good faith is necessary to enable one party to receive the benefits promised for performance, it is implied by law as necessary to effectuate the intent of the parties. Thus, in *Zilg*, an obligation on the publisher's part to make a good faith initial effort to promote a book was implied from the contractual structure in which the author gave the publisher exclusive rights to publish it. It is not enough for Certain Participating Lenders to argue that the Credit Agreement gives them the right to amend. They must demonstrate that they were acting in good faith.

###   D.   Genuine Issues of Material Fact Exist as to Reasonableness and Necessity of Fees and Expenses Sought

In addition to the presence of issues of fact surrounding the motivation behind Certain Participating Lenders' decision to amend the Credit Agreement, issues of fact exist as to the reasonableness and necessity for the fees incurred by Certain Participating Lenders.  In determining the reasonableness of an application for attorney's fees, the relevant considerations are the time spent, the difficulties involved in the case, the nature of the services rendered, the amount in controversy, the professional standing of counsel, the fee customarily charged by other similarly situated attorneys for similar services, the contingency or certainty of compensation, and the results obtained.  *See, e.g,*  American Bar Assn. Model R. of Professional Conduct 1.5(a); *Feldman v. Talon Paint Products, Inc.*, 2002 Dist. LEXIS 20110 (S.D.N.Y. 2002).   Whether and to what extent legal fee and expense requests are excessive are inherently questions of fact which cannot be resolved in dispositive motion practice.  *See, e.g., Seippel v. Jenkins & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 381 (S.D.N.Y. 2004) ("whether a fee is excessive is a question of fact , and cannot be determined on a motion to dismiss.") (citing New York Code of Prof. Resp., Comp. Codes R. & Regs., Title 22, § 1200.11(2004) ("A fee is excessive when, *after a review of the facts*, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.")).

Similarly, although Moving Defendants state that their "bid fees and expenses" have been excluded from the statements for fees and expenses submitted in support of their motion, one cannot summarily determine, based on the description of tasks contained in those documents, whether that is in fact the case.

Here, BNP, as Administrative Agent for all Lenders, appeared in the bankruptcy court and represented the interests of the Lenders.  BNP filed an objection to the Debtors' motion to approve the sale of Propex' assets.  See Norwood Decl. at ¶ 12.  Black Diamond joined BNP's motion.  *Id.*  It is not disputed that BNP's fees and expenses have already been paid from the sale proceeds.   A factual inquiry and determination should be made as to whether Black Diamond's efforts were duplicative of those of BNP and whether those efforts were made on its own behalf, or on behalf of all Lenders.  Certain Participating Lenders, led by Black Diamond's counsel, argue that their efforts resulted in a benefit for all Lenders by maximizing the recovery for all Lenders.  If the fees and expenses sought on this motion were in fact incurred on behalf of all Lenders, then, by definition, they would be duplicative of the efforts made by BNP, which was charged, as Administrative Agent, with representing all Lenders and was already reimbursed for fees and expenses incurred in connection with its charge.  Duplication of services of this type would create issues of fact as to the reasonableness of the fees sought.  *See e.g. In Re KeySpan Corp. Securitites Litigation*, 2005 U.S. Dist. LEXIS 29068, *52 (E.D.N.Y 2005) (Report and Recommendation criticizing duplicative effort of two firms appointed as co-lead counsel where such duplication "unnecessarily increased attorneys fees and expenses."); *National Helicopter Corp. v. City of New York*, 1999 U.S. Dist. LEXIS 11702, *24 (S.D.N.Y. 1999) (finding duplicative efforts by two law firms representing a single prevailing party  unnecessary, resulting in reduction in amounts sought).

**POINT II**

**THE PARTICIPATING LENDERS' CLAIM FOR FEES AND EXPENSES
AGAINST THE PROPEX BANKRUPTCY ESTATE SHOULD BE
<u>TRANSFERERD TO THE TENNESSEE BANKRUPTCY COURT</u>**

Certain Participating Lenders argue that their efforts, including objecting to the proposed

asset sale and submitting their own bid, maximized recoveries for the Lenders.  They argue that

their efforts led to a $20 million increase in the sale price, resulting in a greater recovery for all

Lenders.  This argument is misplaced, for if the Participating Lenders were entitled to their fees

and expenses under a contract theory, they would not need to rely on an argument that their

efforts constituted a substantial contribution to the debtor's estate.  Instead, their attempt to

justify their request for a priority distribution of fees and expenses on the benefit they claim all

of the Debtors' creditors realized solely from their efforts really constitutes an argument for an

administrative claim pursuant to 11 U.S.C. § 503(b).  Section 503(b) provides in pertinent part:

> After notice and a hearing, there shall be allowed, administrative
> expenses, other than claims allowed under section 502(f) of this
> title, including —
> . . .
> (3) the actual, necessary expenses, other than compensation and
> reimbursement specified in paragraph (4) of this subsection,
> incurred by —
> . . .
> (D) a creditor . . . in making a substantial contribution in a case
> under Chapter 9 or 11 of this title;
> . . .
> (4) reasonable compensation for professional services rendered by
> an attorney . . .of an entity whose expense is allowed
> under paragraph (3) of this subsection, based on the time, the
> nature, the extent, and the value of such services, and the cost
> of comparable services other than in a case under this title, and
> reimbursement for actual, necessary expenses incurred by such
> attorney . . . .

11 U.S.C. § 503(b) (2003); *see, e.g., In re McLean Indus., Inc.*, 88 B.R. 36, 39 (Bankr. S.D.N.Y. 1988) (finding the creditor provided a substantial contribution to the estate by objecting to the sale of the debtor's subsidiary stock). As such, this claim should be transferred, pursuant to 28 U.S.C. § 1404, to the Bankruptcy Court for the Eastern District of Tennessee, where the Bankruptcy Case is pending. That Tennessee bankruptcy court, not this Court, is the one most familiar with the history and administration of the Propex bankruptcy case, including the efforts expended by counsel for the Administrative Agent and Propex' creditors.

A District Court may transfer a case under 28 U.S.C. 1404(a) "For the convenience of parties and witnesses, in the interests of justice" to "any other district or division where it might have been brought." An administrative expense claim for a substantial contribution in a case under Chapter 11 is properly brought in the Bankruptcy Court. 11 U.S.C. § 503(b). As to the first two factors, three of the four professionals who have submitted statements supporting or opposing the request for fees and expenses are outside of New York. Two of those, Bradley Aran Boult Cummings, LLP and Jeffrey Norwood are located in Tennessee. The other, Hilco Appraisal Services ("Hilco"), is located in Illinois. While Willkie Farr is obviously located in New York, its presence here is not dispositive. That firm, along with Hilco traveled to and worked extensively in connection with the Tennessee bankruptcy case. The "interest of justice" factor also militates heavily in favor of transfer of venue to the Tennessee bankruptcy court. The Title 11 case to which this action is related is pending in that court. The distribution of proceeds of the sale of Propex's assets springs directly from an order issued by the bankruptcy court. That court will be in the best position to weigh the reasonableness of the request for fees and expenses, including the necessity of those fees in view of the fact that *both* the Administrative Agent (in its role as agent for all Lenders) and Certain Participating Lenders (on their own

behalf) were actively litigating the same objection underlying the fee request.[5]  It is, therefore, in the interest of judicial economy and efficiency to have the bankruptcy court hear the dispute over conflicting claims to those proceeds.  *See Goldberg Holding Corp. v. NEP Productions, Inc*. 93 B.R. 33, 35 (S.D.N.Y. 1988) (after balancing § 1404 factors, court determined that interest of justice would be advanced by transfer of action to court where related Title 11 case was pending).

An additional basis for transfer of venue to the Propex Bankruptcy Court exists under 28 U.S.C. 1334 (e), which provides that "the district Court in which a case under Title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."  28 U.S.C. 1334 (e).[6]  Propex' bankruptcy case was commenced in the Bankruptcy Court for the Eastern District of Tennessee.  The scope of the bankruptcy court's authority turns on whether the proceeding is core or none core.  28 U.S.C. 157; *In re Petrie Retail, Inc.*, 304 F.3d 223, 228 (2d Cir. 2002).  In a core proceeding, the bankruptcy court is said to have "comprehensive power" to hear and determine all cases and may enter appropriate orders ad judgments" subject to review by the District Court.[7]  28 U.S.C. §§ 157 (b)(1), 158; *In re Petrie*, 304 F.3d at 230.  The Bankruptcy Code specifies a non-exhaustive list of core proceedings including, *inter alia*,

---

[5]     Although the Credit Agreement stipulates that New York law will apply, *see* Credit Agreement at p. 145, this factor alone is not dispositive, especially where, as here, there is no apparent dispute over applicable contract law, and the real dispute is over the interpretation of the language in the Credit Agreement in the context of the bankruptcy court-approved asset sale and distribution of proceeds after that sale.  The Tennessee bankruptcy court is well-suited to resolve these issues.

[6]     Moreover, 1334 (e)(2) provides that the bankruptcy court  shall have exclusive jurisdiction over all claims or causes of action that involve construction of section 327 of title 11, dealing with employment of professionals. There is no evidence that the Participating Lenders' counsel, Willkie Farr & Gallagher; Bradley Arant Boult Cummings and Hilco Appraisal Services were authorized by the Bankruptcy Court to assist with the administration of the debtor's estate.  Indeed, both law firms represented interests adverse to the estate, which would prohibit their engagement for that purpose.

[7]     Even in non-core proceedings that otherwise relate to the bankruptcy case under Title 11, "the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157 (c) (1).

"allowance or disallowance of claims against the estate," "determinations of validity, extent or priority of liens,: orders approving the sale of property."  As well as other proceedings affecting the liquidation of the assets of the estate or adjudication of the debtor-creditor or the equity security holder relationship, except personal injury, tort or wrongful death claims."  28 U.S.C. § 157(b)(2)(B), (K), (N), (O).  Core bankruptcy functions include "fixing the order of priority claims against a debtor, placing the property of the bankrupt, wherever found, under the control of the court for equal distribution among the creditors, and administering all property in the bankrupt's possession."  *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 705 (2d Cir. 1995); *In re Petrie,* 304 F.3d at 229-230 (post petition dispute between two non-debtors over pre-petition lease was core, inter alia, because dispute "was based on rights established in the sale order").  *See also In re Millenium Seacarriers, Inc.*, 419 F. 3d 83, 97 (2d Cir. 2005) (rejecting lienors' argument "that the judicial auction liquidating debtor's estate pursuant to sale order deprived bankruptcy court of subject matter jurisdiction to conduct subsequent adversary proceeding to rank the objecting lienors' maritime claims as set forth in the sale order" noting that "[b]ankruptcy courts retain jurisdiction to enforce and interpret their own orders.") (internal citations omitted).

Indeed, pursuant to the Stipulation and Order regarding the distribution of proceeds from the Propex asset sale, the Tennessee bankruptcy court explicitly retained "exclusive jurisdiction to hear and determine all matters relating to or arising from this Stipulation."  Norwood Decl. Ex. H, at ¶ 10 (emphasis added).  Because the Tennessee bankruptcy court retains jurisdiction to enforce and interpret all matters pertaining to the order authorizing and approving the sale of Propex' assets,  that court is ideally suited to determine the propriety of Certain Participating Lenders' request for a priority distribution from the proceeds of that sale.

## <u>CONCLUSION</u>

For the foregoing reasons, Wayzata respectfully requests that the motion for summary judgment and order distributing proceeds be denied in its entirety and that this Court transfer venue of this action to the United States Bankruptcy Court for the Eastern District of Tennessee.


Dated:  New York, New York
        October 9, 2009


Respectfully submitted,

**STEWART OCCHIPINTI, LLP**


By:_____/s/_____
       Frank S. Occhipinti (FO-7204)
65 West 36th Street, 7th Floor
New York, New York 10018
(212) 239-5500

*Attorneys for Defendant Wayzata Opportunities
Fund II, LP*

18