UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
BNP PARIBAS                                      :
                                                 :
           Interpleader-Plaintiff,               :    09 Civ. 5351 (DLC)
                                                 :
     - against -                                 :
                                                 :
WAYZATA OPPORTUNITIES FUND II, LP;               :
et al,                                           :
                                                 :
           Interpleader-Defendants.              :
------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND ORDER DISTRIBUTING PROCEEDS

Joseph T. Baio
Joanna R. Rotgers
Jaime L. Lavin
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York  10019
Phone: (212) 728-8000
Fax: (212) 728-8111
*Attorney for the Black Diamond, Denali, and Eaton Vance Entities and General Electric Capital Corporation*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

I. THE PARTICIPATING LENDERS' AMENDMENT TO THE CREDIT AGREEMENT'S DISTRIBUTION PROVISION IS VALID AS A MATTER OF LAW. ...............................................................................................3

II. THE CREDIT AGREEMENT'S EXPENSES PROVISION REQUIRES THE PAYMENT OF PARTICIPATING LENDERS' ENFORCEMENT FEES AND EXPENSES. ..........................................................................................................................6

    A. The Expenses Provision Covers All Costs And Expenses Incurred By Any Of The Lenders. ..........................................................................................7

    B. The Participating Lenders' Costs And Expenses Were Payable Under The Expenses Provision. ...............................................................................8

III. NO TRANSFER TO THE TENNESSEE BANKRUPTCY COURT IS WARRANTED. ..............................................................................................................10

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**       **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 3

*Buena Vista Home Entm't, Inc. v. Wachovia Bank, N.A.*
   *(In re Musicland Holding Corp.)*, 386 B.R. 428 (S.D.N.Y 2008) .............................. 4, 5

*Davis v. New York*, 316 F.3d 93 (2d Cir. 2002) ............................................................ 2

*Fidelity Summer St. Trust, v. Toronto Dominion (Texas), Inc.*,
   No. Civ. A. 02-11285-GAO, 2002 WL 1858763 (D. Mass. Aug. 14, 2002) .................... 5

*Kirk v. Schindler Elevator Corp.*, No. 03 Civ. 8688, 2004 WL 1933584
   (S.D.N.Y. Aug. 31, 2004) .......................................................................................... 5

*M+J Savitt, Inc. v. Savitt*, No. 08 Civ. 8535, 2009 WL 691278
   (S.D.N.Y. Mar. 17, 2009) ......................................................................................... 4

*Marx v. Am. Home Assurance Co.*, 203 A.D.2d 197 (N.Y. App. Div. 1994) ............... 5, 6

*Nassau Diagnostic Imaging & Radiation Oncology Assocs., P.C.
   v. Winthrop-Univ. Hosp.*, 197 A.D.2d 563 (N.Y. App. Div. 1993) ............................. 6

*Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171 (2d Cir. 2003) ........ 3

*Roswell Capital Partners LLC v. Alternative Constr. Techs.*,
   No. 08 Civ. 10647 (DLC), 2009 WL 222348 (S.D.N.Y. Jan. 30, 2009) ........................ 6

*W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118 (2d Cir. 1990) ................................. 2

**Other Authorities**

Federal Rule of Civil Procedure 56(e)(2) ...................................................................... 2

Certain Participating Lenders[1] hereby submit their reply memorandum of law in support of their Motion for Summary Judgment and Order Distributing Proceeds.[2]

## PRELIMINARY STATEMENT

Wayzata's opposition tries to mask the simplicity of the issue presented. There is a simple legal question at the center of the dispute: should the Court give effect to the Participating Lenders' amendment to the distribution provision of the Credit Agreement? The answer, as Participating Lenders explained in their Opening Memorandum, is yes because the amendment complied with the terms of the Credit Agreement and the sequence of events leading up to the making of the amendment demonstrate good faith. There is no factual dispute relating to the authority to make the amendment or the facts relating to it, making summary judgment entirely appropriate here.

Wayzata counters by asserting that the amendment was "motivated by bad faith" and "animus." (Opp. 9, 13.) Those assertions lack any factual support whatsoever and are insufficient to defeat a motion for summary judgment. Perhaps recognizing that, Wayzata serves up a host of arguments on ancillary issues – contending, for example, the clear language of Section 10.2(ix) that provided that Lenders' enforcement costs and expenses were to be borne by Propex, and arguing that the case should be transferred to the Tennessee bankruptcy court because the Participating Lenders' claim for payment of their costs and expenses, according to

---

[1] All defined terms shall have the same meaning as in the opening memorandum of law in support of Certain Participating Lenders' Motion for Summary Judgment and Order Distributing Proceeds, cited herein as "Opening Mem."

[2] A Supplemental Declaration of Roy Gallagher sworn to October 16, 2009 ("Supp. Gallagher Decl.") and revised Proposed Order are being filed concurrently herewith. Willkie Farr & Gallagher LLP, Bradley Arant Boult Cummings LLP, and Hilco Appraisal Services have now all been paid for their services. (See Supp. Gallagher Decl. ¶¶ 3-4.) Accordingly, Certain Participating Lenders now seek reimbursement from the Administrative Agent for payment of Enforcement Fees and Expenses, as reflected in the revised Proposed Order.

Wayzata, should really be an administrative claim in Propex's bankruptcy. As described further herein, none of these argument is meritorious or goes to the validity of the amendment, and the motion summary judgment should be granted.

## ARGUMENT

Certain Participating Lenders' Opening Memorandum and the papers filed therewith properly support their motion and entitle them to summary judgment.[3] Under Federal Rule of Civil Procedure 56(e)(2), it is Wayzata's burden, in opposing the motion, to present facts sufficient to show a genuine dispute as to a material factual issue. Specifically, that rule provides:

> ***Opposing Party's Obligation to Respond.*** When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

"The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citations omitted); *see also Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) ("reliance upon conclusory statements or mere allegations is not sufficient to defeat a summary

---

[3] Wayzata makes a generic claim that certain of the statements in Movant's Rule 56.1 Statement in Support of Motion for Summary Judgment are not supported by proper evidentiary citations. The claim is misguided. All of the statements denied by Wayzata are supported either by declarations made on personal knowledge or documents properly before the Court and not the subject of a dispute. As an illustration, Wayzata denies as unsupported by a citation to admissible evidence the following statement: "Under the Credit Agreement entered into as of January 31, 2006 the Lenders, in the aggregate, loaned more than $225 million to Propex," the support for which is an exhibit attached to the Gallagher Declaration. However, that statement plainly contains no material facts in dispute, as the Declaration of Jeffrey S. Norwood ("Norwood Decl.") submitted by Wayzata in connection with its Opposition states: "As of the filing of the Petition, loans made by the Lenders to the Debtors totaled approximately $230 million." (*See* Norwood Decl. ¶ 4.)

judgment motion."). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)). Likewise, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "Affirmative evidence" must be adduced by the non-moving party. *Anderson*, 477 U.S. at 257.

Wayzata has failed to carry its factual burden. Wayzata's basis for resisting summary judgment is its bald assertion that the amendment of the Credit Agreement's distribution provision was supposedly "motivated by bad faith." But that assertion has no foundation in any evidence adduced or even in any well-pleaded allegations, because Wayzata has made none.[4] Wayzata has submitted in connection with its Opposition only the Declaration of Jeffrey S. Norwood, its counsel in the Propex bankruptcy proceedings, together with exhibits (all of which are bankruptcy court filings), none of which provide any predicate for Wayzata's speculative claim of "bad faith." Accordingly, as described further herein, Wayzata cannot succeed in opposing the Motion for Summary Judgment.

I. **THE PARTICIPATING LENDERS' AMENDMENT TO THE CREDIT AGREEMENT'S DISTRIBUTION PROVISION IS VALID AS A MATTER OF LAW.**

As stated in the Opening Memorandum, on May 15, 2009, the Participating Lenders amended Section 2.4D of the Credit Agreement to provide that, after payment of the Administrative Agent's fees and expenses, next to be paid are the "Enforcement Fees and

---

[4] Although Wayzata, with its answer, filed Cross-Claims against the so-called "Priority-Claim Lenders" seeking declaratory judgments, those Cross-Claims contained no allegations of bad faith and no facts that would support Wayzata's present assertions of bad faith.

Expenses referenced in the April 24 Letter, and such other fees and expenses incurred by one or more of the Participating Lenders' enforcement of the Obligations." (Opening Mem. at 9; *see also* Cplt., Ex. D, at 2.)

Wayzata argues in opposition *not* that the Participating Lenders were unable to make the amendment or that the Credit Agreement forbids the amendment. Instead, it contends that the Court should inquire into whether the amendment was "appropriate" (Opp. at 2) and argues that the implied covenant of good faith and fair dealing may have been violated, supposedly because the "circumstances strongly indicate that the amendment was motivated by animus towards Wayzata as a result of its successful purchase of Propex's assets." (Opp. at 8.)[5] What Wayzata really requests is for this Court to rewrite the Credit Agreement, which New York law does not permit. *See, e.g., Buena Vista Home Entm't, Inc. v. Wachovia Bank, N.A. (In re Musicland Holding Corp.)*, 386 B.R. 428, 438 (S.D.N.Y. 2008) ("The duty of good faith and fair dealing is a tool of interpretation that cannot be used to rewrite a contract and impose new terms."); *see also M+J Savitt, Inc. v. Savitt*, No. 08 Civ. 8535, 2009 WL 691278, at *9 (S.D.N.Y. Mar. 17, 2009) (Cote, J.) ("The implied covenant of good faith and fair dealing can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties.") (internal quotation omitted).

The Opening Memorandum cited authority upholding the validity of amendments made in accordance with the original contract's express terms and/or approved by less than all of the

---

[5] Wayzata implicitly suggests, in footnote 3 of its Opposition that the amendment somehow violated subsection 2.4C(iii) of the Credit Agreement. The argument is disingenuous. Wayzata says that provision requires that "Administrative Agent shall promptly distribute to each Lender, at the account specified in the payment instructions delivered to Administrative Agent by such Lender, its Pro Rata Share of **all such payments** received by Administrative Agent" (emphasis by Wayzata) but neglects to mention that "**such payments**" refers to "**Aggregate payments of principal and interest,**" not to proceeds of collateral, which is governed by Section 2.4D and to which no restrictions on amendment apply.

lenders. (*See* Opening Mem. at 14.) Wayzata's only attempt to distinguish those cases is to say that "the record of those cases, unlike here, nowhere indicates that amendments were motivated by bad faith towards one aggrieved party with the intent of benefiting another party; therefore, the . . . covenant of good faith and fair dealing was not implicated." (Opp. at 9.)

Those courts all rejected claims for breach of the implied covenant of good faith and fair dealing. (*See* Opening Mem. at 14.) Wayzata's suggestion that the allegations in those cases were somehow different in kind from its innuendoes here of "animus" and "bad faith" is wrong. In all of the cases, one or more parties to the agreement experienced a diminution in their entitlements as a result of the amendment. For example, in *Musicland*, the amendment to a revolving credit agreement worsened the position of trade creditors by giving additional lenders higher priority liens. *See In re Musicland Holding Corp.*, 386 B.R. at 432-35. And in *Fidelity*, by virtue of the amendment, a lender was prevented from selling its loans. *Fidelity Summer St. Trust, v. Toronto Dominion (Texas), Inc.*, No. Civ. A. 02-11285-GAO, 2002 WL 1858763, at *3 (D. Mass. Aug. 14, 2002).

Wayzata's bare assertions – unsupported by any evidence or even any well-pleaded allegations – that Participating Lenders acted in bad faith and somehow violated the implied covenant of good faith and fair dealing when they amended the Credit Agreement are patently insufficient to defeat a summary judgment motion. *See, e.g., Kirk v. Schindler Elevator Corp.*, No. 03 Civ. 8688, 2004 WL 1933584, at * 5 (S.D.N.Y. Aug. 31, 2004) ("Absent a single piece of evidence to support his allegations of manipulation and bad faith, [plaintiff] proffers mere generalized and conclusory assertions. As is well-recognized in this Circuit, mere speculations and conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment.") (internal quotation omitted); *Marx v. Am. Home Assurance Co.*, 203 A.D.2d 197,

198 (N.Y. App. Div. 1994) ("Plaintiff's bare allegations of fraud and bad faith, which are devoid of any factual support, are insufficient to defeat a motion for summary judgment."); *Nassau Diagnostic Imaging & Radiation Oncology Assocs., P.C. v. Winthrop-Univ. Hosp.*, 197 A.D.2d 563, 564 (N.Y. App. Div. 1993) ("the plaintiff's conclusory allegations that the defendants acted maliciously and in bad faith were insufficient to defeat summary judgment in favor of the defendants.").

As described in the Opening Memorandum, the Participating Lenders believed they were entitled to payment of their Enforcement Fees and Expenses under the express provisions of Section 10.2(ix) of the Credit Agreement and made a demand for payment on April 24, 2009. (*See* Opening Mem. at 6.) Because no payment was made in response to that or their follow-up request, the Participating Lenders amended the Credit Agreement on May 15, 2009 and again requested payment. This exercise of contractual rights is not an act of "bad faith" that violates the implied covenant of good faith and fair dealing. This Court has recognized, for example, that "[e]xercising contract rights to protect an investment . . . does not constitute bad faith." *Roswell Capital Partners LLC v. Alternative Constr. Techs.*, No. 08 Civ. 10647 (DLC), 2009 WL 222348, at *14 (S.D.N.Y. Jan. 30, 2009) (Cote, J.) (citing *Red Tulip, LLC v. Neiva*, 44 A.D.3d 204, 842 N.Y.S.2d 1, 7 (1st Dep't 2007). Wayzata's mere utterance of the phrase "motivated by bad faith" is belied by the undisputed sequence of events and does not defeat the motion for summary judgment.

## II.   THE CREDIT AGREEMENT'S EXPENSES PROVISION REQUIRES THE PAYMENT OF PARTICIPATING LENDERS' ENFORCEMENT FEES AND EXPENSES.

The Participating Lenders' amendment to Section 2.4D granted them to right to payment of the Enforcement Fees and Expenses described in their April 24 Letter, making the question of whether Section 10.2(ix) of the Credit Agreement itself requires the payments an academic one.

Nonetheless, the Participating Lenders' right payment of costs and expenses under Section 10.2(ix) of the Credit Agreement is clear. Wayzata's arguments to the contrary are unavailing.

### A. The Expenses Provision Covers All Costs And Expenses Incurred By Any Of The Lenders.

As noted in the Opening Memorandum, the Credit Agreement provides that "the Company agrees to pay promptly . . . (ix) all costs and expenses, including reasonable attorneys' fees . . . incurred by Administrative Agent and Lenders in enforcing any Obligations of or in collecting any payments due from any Loan Party hereunder . . . or in connection with any refinancing or restructuring of the credit arrangements. . . ." (Credit Agmt. § 10.2.) The plain meaning of this provision is that any costs or expenses incurred by any of the Lenders in enforcing the Obligations would be paid by Propex.

Wayzata would rewrite this provision and have it provide for payment only of costs and expenses "incurred by **both** Administrative Agent and **all** Lenders" so that no individual Lender would be entitled to payment of costs and expenses. (*See* Opp. at 5.) Although "Lenders" refers to the group collectively, it is nowhere restricted to mean "all Lenders." Also, *and*, as used here in a prepositional phrase, cannot reasonably be construed to mean *both*.

There is no reason to read Section 10.2's language to require that costs and expenses be incurred *jointly* by the Administrative Agent and Lenders in order to paid, just as there is no reason to conclude that *all* Lenders have to incur costs and expenses in order for them to be paid. Indeed, if the provision did read that way, it would provide little added benefit to the Lenders entering into the Credit Agreement and it is difficult to see why any Lender would find it acceptable. The only reasonable interpretation of Section 10.2(ix) is that the costs and expenses of the Administrative Agent will be borne by the Company and the costs and expenses of the Lenders will also be borne by the Company.

### B. The Participating Lenders' Costs And Expenses Were Payable Under The Expenses Provision.

Although Wayzata claims that "issues of fact exist as to the reasonableness and necessity for the fees incurred by Certain Participating Lenders," that statement distorts the requirements for payment under Section 10.2(ix), which are minimal. Under Section 10.2(ix), "all costs and expenses" are to be paid if they were incurred "in enforcing any Obligations of or in collective any payments due from any Loan Party." The Credit Agreement contains no requirement that the costs and expenses be "necessary." Accordingly, the costs and expenses associated with an appraisal of Propex's assets requested by the Participating Lenders – $240,403.69 – cannot be in dispute.

The only limitation on the costs and expenses that are payable under Section 10.2(ix) is that the attorneys' fees must be reasonable. The attorneys' fees were reasonable, as demonstrated in the Opening Memorandum (*see* Opening Mem. at 15-17), and have been paid by the Lenders that incurred them, who now seek to be reimbursed by the Administrative Agent. (*See* Supp. Gallagher Decl. ¶¶ 3-4.) Wayzata has raised no genuine factual issue concerning the reasonableness of the attorneys fees; it has only hinted that some of the attorneys' fees may have been for "bid fees and expenses" and that the attorneys' work may have duplicated that done by counsel for the Administrative Agent, BNP. Neither argument has merit.

The bills of Willkie Farr & Gallagher LLP and Bradley Arant Boult Cummings LLP, totaling $408,378.44, represent the attorneys' fees incurred in objecting to the proposed sale of Propex's assets. (*See* Gallagher Decl. ¶¶ 3-4, 7.) Those detailed bills, describing the work performed, the dates, and other details, were sent to BNP with the April 24 Letter and attached to BNP's Interpleader Complaint filed June 9, 2009. That Wayzata has had ample opportunity – some four months – to scour those bills for any tasks that may have been bid-related rather than

enforcement-related and has not challenged a single entry indicates that there is no genuine factual issue in dispute.

Wayzata's claim of "duplication" is equally specious. Wayzata points to two bankruptcy court filings dated March 2, 2009 – BNP's 23-page objection to Propex's motion for an order to approve bid procedures and Black Diamond's 6-page joinder to that objection (Norwood Decl., Exs. F & G) – as evidence of the supposed "duplication." There was no "duplication," as Black Diamond's joinder and objection amplified and explained in more detail four of the twelve concerns identified in BNP's objection.[6] And even if the work on these filings – which were plainly meant to be read together and are mutually supportive – had been duplicative (which it was not), the attorneys' fees expended on this joinder constitute a small fraction of the legal bills submitted – less than $13,000, or approximately 3% of the $408,378.44 in total attorneys' fees.[7]

Indeed, the bulk of the attorneys' fees were incurred in connection with Participating Lenders' conditional objection to the proposed sale filed March 18, 2009, which argued that Wayzata's the Stalking Horse bid for $61.56 million would mean a sale of Propex's assets for less than their liquidation value, discovery relating to that conditional objection, and the hearing on those issues held March 24, 2009. (*See* Opening Mem. at 5.) After the objection, Wayzata increased its bid and ultimately purchased Propex's assets for $82 million. Tellingly, Wayzata

---

[6] BNP's objection argued that (i) credit bids should be allowed, (ii) the break-up fee was unnecessary and excessive, and (iii) 10 additional items should be modified, including the DIP cross-default and DIP agent consultant rights. (*See* Norwood Decl., Ex. F.) The Black Diamond joinder and objection argued that (i) the break-up fee was unnecessary, (ii) significant administrative expenses would be left unpaid, (iii) there should be no termination in the event of a default under the DIP facility, and (iv) the DIP Agent (a Wayzata-controlled entity) should have no right to consult regarding competing bids. (*See* Norwood Decl., Ex. G.)

[7] The costs of the work relating to the joinder and objection are evident from the bills themselves: $8435.50 from the Willkie Farr bill for professional services rendered through February 28, 2009; $3736.00 from the Willkie Farr bill for professional services rendered through March 31, 2009; and $244.50 from the Bradley Arant bill for professional services rendered through March 31, 2009, for a total of $12,416. (*See* Cplt. Ex. B.)

has not argued that any of that work was "duplicative" and, in short, has failed to raise any material factual issue concerning the reasonableness of the attorneys' fees sought.

### III. NO TRANSFER TO THE TENNESSEE BANKRUPTCY COURT IS WARRANTED.

Wayzata's argument for transfer starts from a faulty premise: that the Participating Lenders' claim for costs and expenses under the Credit Agreement is instead an administrative claim under 11 U.S.C. § 503(b). This is a fiction created by Wayzata. Never have Certain Participating Lenders claimed an entitlement to their costs and expenses under the Bankruptcy Code; their claim has always been a contractual one. This Court is empowered to and should resolve the straightforward legal issues concerning the application of the Credit Agreement under New York law; no transfer of the case would be appropriate.

### CONCLUSION

For the reasons set forth herein and in their Opening Memorandum, Certain Participating Lenders respectfully request that the Court enter summary judgment in their favor and order providing for the payment of Participating Lenders' Enforcement Fees and Expenses.

Dated:  New York, New York
        October 16, 2009

WILLKIE FARR & GALLAGHER LLP

By: _____
Joseph T. Baio (jbaio@willkie.com)
(A Member of the Firm)

787 Seventh Avenue
New York, New York  10019
Phone: (212) 728-8000
Fax: (212) 728-8111

*Attorney for the Black Diamond, Denali, and Eaton Vance Entities and General Electric Capital Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
BNP PARIBAS                                      :
                                                 :
               Interpleader-Plaintiff,    :    09 Civ. 5351 (DLC)
                                                 :
      - against -                            :
                                                 :    **ORDER**
                                                 :
WAYZATA OPPORTUNITIES FUND II, LP;               :
et al,                                           :
                                                 :
               Interpleader-Defendants.   :

------------------------------------------------------------ x

      THIS MATTER, having come before the Court on the motion of the Certain Participating Lenders (the Black Diamond, Eaton Vance and Denali Entities and General Electric Capital Corporation), by their attorneys, for an Order granting Summary Judgment and Distributing Proceeds in the above actions pursuant to Federal Rule of Civil Procedure 56(c); and Wayzata having opposed the motion; and the Court having considered the motion papers filed by all parties;

      IT IS on this _____ day of _____, 2009;

      ORDERED that the Motion for Summary Judgment and an Order Distributing Proceeds is hereby GRANTED, with prejudice.

5190793.1

- 2 -

ORDERED that the Clerk shall pay the Disputed Proceeds ($648,782.13 currently on deposit with the Court Registry Investment System) to BNP to distribute to the Participating Lenders forthwith in such amounts and matter as a representative of Certain Participating Lenders shall direct.

_____
Denise L. Cote, U.S.D.J